

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

September 5, 2024

**VIA ECF**

The Honorable Dale E. Ho
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    **Re:**   *United States v. Joseph Fuller*, **24 Cr. 181 (DEH)**

Dear Judge Ho:

    The Government respectfully submits this letter in advance of the sentencing for defendant Joseph Fuller in the above-referenced matter, which is currently scheduled for September 12, 2024. For the reasons set forth below, the Government respectfully submits that a sentence of imprisonment within the bottom half of the applicable U.S. Sentencing Guidelines (the "Guidelines") range of 18 to 24 months' imprisonment would be sufficient but not greater than necessary to serve the purposes of sentencing.

    **I.**    **Background**

    NYCHA is the largest public housing authority in the country. It provides housing to low- and moderate-income New York City residents and is funded in large part from the U.S. Department of Housing & Urban Development. (Presentence Report ("PSR") ¶¶ 9-10; *see generally* Dkt. 18 (background letter)). From March 2021 through December 2022, the defendant was employed as an assistant superintendent at Seth Low Houses, a NYCHA housing development located in Brooklyn, New York, and was then employed from December 2022 through March 2024 as an assistant superintendent at Baisley Park in Queens. (PSR ¶¶ 15, 80). As an assistant superintendent, the defendant was involved in awarding construction and repair jobs to contractors seeking to be hired for work at NYCHA properties. For jobs that were under a certain threshold (often referred to as "no-bid contracts"), the defendant could hire contractors directly without a competitive bid process or other oversight. (PSR ¶¶ 11-13). However, rather than awarding work to contractors based solely on merit, the defendant awarded no-bid contracts based on the payment of bribes.

    From at least April 2021 through at least September 2022, the defendant directly accepted bribes from at least two different NYCHA contractors who performed work at Seth Low Houses in exchange for awarding no-bid contracts to those contractors or approving work performed under larger contracts. Specifically, one contractor paid the defendant 30% of the value of each contract—$3,000 in cash for each of at least five $10,000 contracts, and approximately $1,500 in

cash for each of at least four $5,000 contracts—for no-bid contracts received from the defendant at Seth Low Houses. (PSR ¶ 19(b)). Another contractor paid the defendant 10% of the value of each contract in bribes at first, but the defendant then increased the rate to approximately 15% or 20% of the contract value, telling the contractor that other contractors were willing to pay him a higher amount. That contractor did not pay the higher amount, and did not receive additional work from the defendant at Seth Low Houses. (*Id.* ¶ 20(b), (c)). Both contractors paid these bribes based on express requests from the defendant and based on the understanding—borne out by the second contractor's experience—that if they did not pay, they would not be awarded additional no-bid contracts by the defendant for work at that housing development. (PSR ¶¶ 19(f), 20(g)).

Furthermore, since entering into the plea agreement with the defendant, the Government has interviewed an additional contractor who paid the defendant bribes in exchange for no-bid contracts at NYCHA. Notably, that contractor paid the defendant at both Seth Low Houses and Baisley Park, where the defendant worked beginning in December 2022.

In addition to receiving bribes directly for work he awarded, the defendant also conspired with at least two others in the bribery scheme. For example, the defendant shared bribe money with co-defendant George Kemp, the superintendent at Seth Low Houses (and expressly told the second contractor that more bribe money was required in part because the defendant had to share it with Kemp). (PSR ¶¶ 19(c), 20(c)). The defendant also told a contractor to pay him $1,500 for work the contractor was awarded by co-defendant Chrisie Salter (who was also the defendant's girlfriend) at a different NYCHA development. (PSR ¶ 19(d)).

In total, the defendant is being held responsible for conspiring to accept bribes totaling approximately $37,800 in exchange for awarding no-bid contracts worth a total of approximately $218,000.

The defendant and his two co-defendants were charged by complaint in connection with this conduct on January 31, 2024, and arrested on February 6, 2024. (PSR ¶ 23).

The defendant's actions were part of a widespread culture of corruption at NYCHA. The Government charged 70 current and former NYCHA employees, including the defendant, with bribery and extortion offenses in a single, coordinated takedown. Although the majority of these defendants were charged separately, the charging instruments allege that these NYCHA employees received similar bribe amounts from contractors for no-bid contracts. In fact, the required bribe amount (typically between 10 or 20 percent of the contract's value) became well known among contractors because so many NYCHA employees were demanding payments for work. (*See generally* Dkt. 18 (background letter)).[1]

The impact of this corruption by former and current NYCHA employees was vast: collectively, the 70 defendants are alleged to have received more than $2 million in bribe or

---

[1] To date, 43 defendants have pleaded guilty or are scheduled to plead guilty to felony charges, and eight defendants have pleaded guilty to misdemeanor charges.

extortion payments from NYCHA contractors in exchange for awarding at least approximately $13 million in NYCHA contracts at approximately 96 developments in all five boroughs. (*Id.*).

## II. The Defendant's Plea and Guidelines Range

On March 27, 2024, the defendant pleaded guilty to an Information charging one count of conspiracy to solicit and receive a bribe by an agent of an organization receiving federal funds, in violation of 18 U.S.C. § 371. (PSR ¶ 4). Specifically, the defendant was charged with conspiring to solicit and accept a total of at least $37,800 in bribes in exchange for arranging for certain contractors to receive no-bid contracts from NYCHA worth at least approximately $218,000. (*See* Information (Dkt. 25)).

As set forth in the parties' plea agreement and confirmed in the Presentence Report, the defendant's base offense level is 14 pursuant to U.S.S.G. § 2C1.1(a)(1) because he was a public official, and that level is increased by a total of six levels because the offense involved more than one bribe and the value of the bribe payments amounted to between $15,000 and $40,000. Assuming the defendant clearly demonstrates acceptance of responsibility, a three-level reduction will be warranted pursuant to U.S.S.G. § 3E1.1(a) and (b). A two-level reduction is also applied because the defendant has zero criminal history. Thus, the defendant's applicable offense level is 15. (PSR ¶¶ 32-42).

The defendant has zero criminal history points and is therefore in Criminal History Category I. (PSR ¶ 46).

Based on the above calculations, the defendant's Guidelines range is 18 to 24 months' imprisonment (the "Stipulated Guidelines Range"). (PSR at 26). At Guidelines offense level 15, the applicable fine range is $7,500 to $75,000. (*Id.*). The Probation Office recommends a sentence of 2 months' imprisonment and three years of supervised release. (*Id.*). The defendant requests a sentence of time served. (Def. Mem. at 1).

The defendant has agreed to pay $37,800 in restitution to NYCHA and to forfeit $37,800 in illegal proceeds. (PSR ¶¶ 100, 102).

## III. Discussion

### A. Applicable Law

Following *United States v. Booker*, 543 U.S. 220 (2005) and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005), the Guidelines continue to provide a critical touchstone. Indeed, while the Guidelines are no longer mandatory, they remain in place, and district courts must "consult" them and "take them into account" when sentencing. *Booker*, 543 U.S. at 264. As the Supreme Court has stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States,* 552 U.S. 38, 49 (2007).

After calculating the Guidelines range, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(l)-(7). *See Gall,* 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant;
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Although the Court may not presume the reasonableness of a within-Guidelines sentence, the Second Circuit has recognized that "[i]n the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." *United States v. Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006); *see also Kimbrough v. United States*, 552 U.S. 85, 108-09 (2007) ("We have accordingly recognized that, in the ordinary case, the Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." (quotations omitted)).

### B. A Sentence of Imprisonment Within the Bottom Half of the Guidelines Range Is Necessary in This Case

A sentence of imprisonment within the bottom half of the applicable Guidelines range of 18 to 24 months' imprisonment would be sufficient, but not greater than necessary, to serve the purposes of sentencing in this case. As discussed below, but for the defendant's early acceptance of responsibility and waiver of indictment and discovery, the Government would be seeking a sentence within the top half of the Guidelines range.

*First*, the seriousness of the defendant's conduct and the need to promote respect for the law support imposition of a substantial sentence of imprisonment. The defendant repeatedly betrayed his employer and abused the position of trust that he held, and ultimately betrayed the trust of the residents of the NYCHA development for which he had responsibility, all in order to enrich himself. Courts in this District have repeatedly emphasized the harm that these bribery and corruption offenses cause.

For example, Judge Cote, in sentencing a different NYCHA employee to 15 months' imprisonment (the middle of the 12-to-18-month Guidelines range for accepting a smaller amount of money across fewer bribes in exchange for no-bid contracts), described the offense as "a real betrayal. . . . You betrayed your employer, you betrayed the city, you betrayed the residents of the houses at which you worked. This was a corruption of your job and your duties. You were given responsibility and authority, and instead, you used that to get money you had no right to. And corruption is a corrosive, destructive issue. People need to have faith in their government. They need to have faith in their public housing that it's a community resource that can be used to support those in need." *United States v. Figueroa*, No. 22 Cr. 605 (DLC), Dkt. 27 at 17 (S.D.N.Y. Feb. 9, 2023). In a recent bribery case involving corrupt Drug Enforcement Administration officials, Judge Oetken called bribery of public officials "insidious [because] it undermines the public's faith in our system . . . . There are a lot of countries around the world where this sort of corruption is routine, it's part of life, everyone expects it. One of the things that sets our country apart, at least in our aspirations and our ideals, is to be free of this sort of corruption." *United States v. Costanzo*, No. 22 Cr. 281 (JPO), Dkt. 253 at 54 (S.D.N.Y. Apr. 24, 2024).

These concerns are heightened when the conduct is part of a conspiracy, as here. The defendant did not just require payments for work awarded at his own development but demanded payments from work at other developments as well, infecting even more of the NYCHA housing system and increasing the corruption among NYCHA employees. From a contractor's perspective, seeing that the defendant was demanding bribes not just secretly for himself but openly with the superintendent (Kemp) and at another development where the defendant had relationships (with Salter) shows the contractors that the entire system is corrupt. The corrupt agreement also makes this activity harder to detect; the superintendent at Seth Low was not going to report any misconduct when he was himself part of the scheme. For these reasons, the defendant's participation in a conspiracy should be treated more seriously than the conduct of most of the other defendants who are alleged to have acted alone.

Even beyond his participation in a conspiracy, the defendant's conduct included several aggravating factors. The defendant referred contractors to other corrupt NYCHA employees, including but not limited to Salter, and told them that the "same deal" the contractors had with the defendant applied to the other developments—that is, the contractors should pay for work at those developments too. (*See* PSR ¶ 20(d)). Again, the defendant, unlike many of the other charged defendants, expressly increased the level of corruption at NYCHA by telling contractors they should pay other employees in order to get work. Additionally, the amount of bribes demanded by the defendant was a higher amount than many of the others; typically, bribe amounts among the 70 NYCHA defendants were approximately 10-20% of the value of the contract, but the defendant regularly charged at least one contractor ***30%***—up to $3,000 for each $10,000 job. This aggravating factor also compels a significant sentence to account for the seriousness of the defendant's conduct.

Finally, in addition to undermining the public's trust in NYCHA, the conduct damaged NYCHA's mission and, potentially, the wellbeing of its residents. Rather than select contractors based on the quality of their work and the price they offered, the defendant chose contractors based on his own personal greed.

*Second*, a within-Guidelines sentence is vital to deter others who may seek to engage in similar schemes—a factor that would not be adequately addressed with a non-incarceratory sentence or a token incarceratory sentence such as the two months recommended by the Probation Office. By charging 70 defendants with this conduct, the Government sought to send a real message that this type of behavior will not be tolerated. However, this message is likely to ring hollow if these defendants receive non-incarceratory or minimal sentences for years-long and repeated abuses of their positions of responsibility over the safety and well-being of some of the most vulnerable New Yorkers—particularly in the case of this defendant who conspired with others, referred contractors to other corrupt employees, and demanded some of the highest percentages of bribe payments for each contract.

Prior arrests of individuals engaged in this type of bribery scheme have not ended this type of conduct. In fact, the defendant himself continued to accept bribes even after the well-publicized arrests of nine contractors who were charged with bribing NYCHA superintendents in Brooklyn in September 2021,[2] *and* after the 2022 convictions of two NYCHA employees who were charged with soliciting bribes.[3] Any sentence imposed in this case must send a message to the defendant and others who seek to illegally profit from their NYCHA positions—or other positions of trust in local, state, or federal government agencies—that such conduct will not be tolerated and that serious consequences, including incarceration, will result.

*Third*, as to the history and characteristics of the defendant, while the defendant and the Probation Office point to his consistent employment history and his lack of any criminal history, the Court should reject these characteristics as a basis for a non-incarceratory sentence. The defendant's lack of criminal history is already reflected in his Guidelines range. Not only was the defendant placed in Criminal History Category I based on his zero-point offender status, but he also received a two-point reduction in offense level.

The defendant's history of supporting his family and being a devoted family member also does not distinguish him from most of the 70 defendants charged with taking bribes while at NYCHA or from individuals who commit bribery generally. As Judge Cote said when sentencing a different NYCHA defendant, "your attorney is absolutely correct that you avoided many perils in your community as you were growing up in choosing to get legitimate employment. And it is indeed a tragedy that you let the needs of family . . . prey upon you in a way that caused you to lose your way and put so much at risk. Fundamentally what you did, though, was a real betrayal. You may have been a good family member, but you were not a good employee." *Figueroa*, Dkt. 27 at 17. Judge Cote concluded that "I think it would be deeply wrong for you not have a prison

---

[2] *See* NBC New York, "9 Contractors Charged in 'Brazen' NYCHA Kickback Scheme: Brooklyn DA" (Sept. 20, 2021), https://www.nbcnewyork.com/news/local/crime-and-courts/contractors-expected-to-be-charged-in-alleged-nycha-kickback-scheme-sources/3280939.

[3] *See* United States Attorney's Office for the Southern District of New York, Press Release, "NYCHA Superintendents Plead Guilty To Accepting Bribes" (Nov. 3, 2022), https://www.justice.gov/usao-sdny/pr/nycha-superintendents-plead-guilty-accepting-bribes.

sentence. Should any other NYCHA employee be tempted to engage in corrupt acts like you did, I have to do what I can to deter that behavior. I have to make it clear that public service is an honorable profession, and when people betray the trust that's been given them, there are consequences besides losing your job." *Id.* at 17-18. So too here. The defendant's devotion to his family is admirable, but it does not excuse his role in a years-long corrupt agreement to take advantage of the trust placed in him by NYCHA and to exploit contractors by demanding ever-increasing bribes and freezing them out if they refused to pay—including after others were arrested for engaging in the exact same conduct.[4]

*Fourth*, the Government submits that a sentence within the bottom half of the applicable Guidelines range is appropriate considering the defendant's relative culpability and the sentences that have been imposed in this District on other NYCHA employees who pleaded guilty to accepting bribes in exchange for awarding no-bid repair contracts. A chart of the applicable Guidelines ranges and sentenced imposed on the defendants who have been sentenced on felony convictions so far is attached hereto as Exhibit A.[5] Indeed, the need to avoid unwarranted sentencing disparities weighs heavily in favor of imposing a substantial incarceratory sentence. *See, e.g.*, *United States v. Frias*, 521 F.3d 229, 236 (2d Cir. 2008) (explaining that this factor refers to comparing defendant to defendants in other cases who are similarly situated and committed similar offenses). All but one of the defendants convicted of felonies have received sentences of imprisonment ranging from five to 33 months, and for the reasons discussed above, this defendant's conduct is on the more serious end of the spectrum.

Each of these factors weighs in favor of a substantial sentence of imprisonment that would, but for the defendant's early acceptance of responsibility, lead the Government to request a sentence within the top half of the applicable Guidelines range. In this case, however, the Government believes that it is appropriate to acknowledge, under Section 3553(a), that the defendant accepted full responsibility for his conduct unusually early. The defendant was one of the first defendants in the case to accept responsibility, and approximately six weeks after his arrest, the defendant waived indictment, waived discovery, and pled guilty to an Information. In the context of a 70-defendant case, this early acceptance is meaningful and saved the Government substantial resources in connection with grand jury practice, discovery, and general case management above and beyond what is applicable in a typical case. The Government acknowledges that the defendant's early acceptance warrants a modest downward adjustment from what the Government would otherwise be requesting. Accordingly, the Government submits that a sentence of imprisonment within the bottom half of the Guidelines range is warranted here.

---

[4] The PSR references the defendant's "strong support network" including his girlfriend (PSR at 27), but he committed this offense *with* his girlfriend (and co-defendant), Salter, so whatever her support, she has not influenced him to stay out of trouble.

[5] Exhibit A does not include the small number of cases in which the Government has agreed to a misdemeanor disposition.

**IV.    Conclusion**

For the reasons set forth above, the Court should impose a sentence of imprisonment within the bottom half of the applicable Guidelines range of 18 to 24 months' imprisonment, as well as the agreed-upon restitution and forfeiture.[6,7]

                                              Respectfully submitted,

                                              DAMIAN WILLIAMS
                                              United States Attorney

by: _____/s/_____
Jerry Fang / Jacob R. Fiddelman / Meredith Foster /
Catherine Ghosh / Sheb Swett
Assistant United States Attorneys
(212) 637-2584/-1024/-2310/-1114/-6522

cc:    David Bertan, Esq. (via ECF)

---

[6] To the extent that the Court is inclined to sentence the defendant to a non-incarceratory sentence, the Government requests that the Court sentence the defendant to probation instead of supervised release.

[7] In light of recent Second Circuit decisions, the Government respectfully requests that, for each special condition of supervised release that the Court intends to impose, the Court briefly state its reasons for concluding that each such special condition is "reasonably related" to at least one of the factors set forth in U.S.S.G. § 5D1.3(b). *See, e.g.*, *United States v. Sims*, 92 F.4th 115 (2d Cir. 2024) (vacating special condition and remanding for district court to provide sufficient explanation for imposition of condition); *United States v. Oliveras*, 96 F.4th 298 (2d Cir. 2024) (same); *United States v. Jimenez*, No. 22-1022, 2024 WL 1152535 (2d Cir. Mar. 18, 2024) (summary order) (same).

**EXHIBIT A**
**Felony Sentences Imposed on Related Defendants to Date**

| Defendant | Docket | Date | Guidelines | Sentence |
|---|---|---|---|---|
| Gibbs, Leroy* | 22 Cr. 534 (CM) | 2/8/23 | 27 to 33 months | 33 months' imprisonment |
| Figueroa, Julio | 22 Cr. 605 (DLC) | 2/9/23 | 12 to 18 months | 15 months' imprisonment |
| Rivera, John | 24 Cr. 150 (DLC) | 6/28/24 | 12 to 18 months | 12 months and one day's imprisonment |
| Quetell, Eddie | 24 Cr. 141 (VSB) | 7/23/24 | 12 to 18 months | 5 months' imprisonment |
| Escobar, Mauricio | 24 Cr. 213 (JPO) | 7/25/24 | 12 to 18 months | 5 months' imprisonment |
| Hernandez, Jose | 24 Cr. 156 (ALC) | 7/25/24 | 30 to 37 months | 19 months' imprisonment |
| Lucas, Tara | 24 Cr. 148 (LTS) | 7/30/24 | 18 to 24 months | 4 years' probation with 12 months' home detention |
| Rupnarain, Dwarka | 24 Cr. 125 (VEC) | 8/5/24 | 24 to 30 months | 20 months' imprisonment |
| Samuel, Clarence | 24 Cr. 241 (LGS) | 9/3/24 | 24 to 30 months | 17 months' imprisonment |
| Johnson, Michael | 24 Cr. 135 (JMF) | 9/5/24 | 24 to 30 months | 16 months' imprisonment |

---

* Gibbs's case involved an aggravating enhancement for obstruction of justice.